**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LAUREN TRATAR and | ) | |
| STEVEN OLSON, | ) | |
| | ) | Case No. 10 CV 7063 |
| Plaintiffs, | ) | |
| | ) | |
| | ) | Judge Lefkow |
| v. | ) | Mag. Judge Finnegan |
| | ) | |
| BAC HOME LOANS SERVICING, LP, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT BAC HOME LOANS SERVICING, L.P.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant BAC Home Loans Servicing, L.P. ("BAC"), through undersigned counsel,

submits this memorandum in support of its Motion to Dismiss Plaintiffs' Complaint, pursuant to

Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

**I.      INTRODUCTION AND BACKGROUND**

This case involves a dispute over a residential loan and mortgage. Plaintiffs' Complaint,

which is copied from the internet and does not allege any facts specific to Plaintiffs' claims,

alleges causes of action for breach of the implied covenant of good faith and fair dealing, breach

of fiduciary duty,[1] negligence / negligence per se, common law fraud, fraud by non-disclosure,

violation of Truth in Lending Act ("TILA"), intentional infliction of emotional distress, and

unfair business practices.[2]  (Compl. ¶¶ 22, 54-105.)

Plaintiffs' Complaint contains virtually no specific facts other than:

---

[1] Plaintiffs assert this claim separately against each of the following: the "broker," the "appraiser," the
"lender" and the "closing agent," respectively.  (Compl. ¶¶ 62-77.)
[2] Plaintiffs' Complaint also contains a section entitled "Quiet Title" and references "unjust enrichment."
While it is unclear whether Plaintiffs intended to plead causes of action for quiet title and unjust
enrichment, undersigned counsel, nonetheless, now moves to dismiss these claims as well.

1. Plaintiffs "entered into an express contract . . . [which] consisted of a promissory note . . . and a lien document."  (Compl. ¶ 4.); and

2. Plaintiffs were charged various fees at closing.  (*See* Compl. ¶ 15.)

Plaintiffs do not allege any other facts in support of their claims against Defendant. The loan documents show that on September 7, 2007, Plaintiffs borrowed funds to purchase a home in Naperville, Illinois. In connection with that loan, Plaintiffs executed a promissory note and mortgage, which were assigned to BAC and recorded on November 16, 2009. (*See* Request for Judicial Notice ("RJN"), Exh. A.[3]) Plaintiffs have not made a payment under their mortgage since September 2008. Accordingly, BAC, as servicer to the loan, recorded a lis pendens against the property on July 12, 2010. (RJN, Exh. B.) Plaintiffs then filed their Complaint on November 2, 2010 – more than three years after the loan transaction at issue and after the recording of the lis pendens.

Plaintiffs' Complaint is completely devoid of specific facts and is legally deficient. Aside from the caption of the Complaint, BAC is mentioned in exactly <u>two</u> other instances. (Compl. ¶¶ 1, 100.) The reason for its factual deficiencies is clear – Plaintiffs' Complaint appears to have been copied from a website. Indeed, this complaint has been used, almost verbatim, by other *pro se* litigants.  (*See* RJN, Exhs. C, E, F, H & J.) Not surprisingly, the U.S. District Court for the Central District of California deemed this complaint "wholly devoid of any factual basis supporting Petitioner's many legal conclusions." (*See* RJN, Exh. G.) An Oregon federal court has ruled that this internet complaint should be dismissed with prejudice and that "the

---

[3] While a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is limited to the allegations in the pleadings, documents attached to a Motion to Dismiss, such as RJN, Exh. A, are considered part of the pleadings if they are referred to in the complaint and are central to the plaintiffs' claim. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).  BAC's RJN is filed concurrently with its Motion to Dismiss.

deficiencies in all of plaintiffs' claims cannot be cured by amendment." (RJN, Exh. I.) Plaintiffs' Complaint is no different and should be dismissed with prejudice.

## II.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* In order to state a claim, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*; *see also Iqbal*, 129 S. Ct. at 1949. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## III.   LEGAL ANALYSIS

### A.    *Plaintiffs Have Not Properly Commenced An Action Against BAC*

The purpose of Rule 8 is to protect defendants from undefined charges and keep federal courts free of frivolous suits. *See Frieri v. City of Chicago*, 127 F. Supp. 2d 992, 994-95 (N.D. Ill. 2001). In order to allow a defendant to frame a responsive pleading, Rule 8(a)(2) requires a pleading which sets forth a claim for relief to contain "a short and plain statement of the claim showing the pleader is entitled to relief." Rule 8(e)(1) requires each averment to be "simple, concise, and direct," and Rule 10(b) requires claims to be limited to the extent possible to a "statement of a single set of circumstances." Plaintiffs' Complaint does not satisfy any of these requirements.

**B.     *Plaintiffs' Complaint Against BAC Must Be Dismissed Because There Are No Specific Allegations Against BAC*[4]**

The Complaint does not plead any specific allegations against BAC. (*See generally* Compl.) In lieu of specific factual allegations against BAC, all of the allegations are pled against the nebulous "Lenders" or "Lender et al" even though Countrywide Bank FSB, First Executive Appraisal Services, Greater Illinois Title Company and BAC are separate legal entities. (*See* Compl. ¶¶ 5, 8, 10, 14, 25.) Plaintiffs also attempt to lump BAC into the same category of entities as the unidentified "Agent," the "Appraiser," the "Underwriter," and the "Closing Agent." Accordingly, the Complaint against BAC must be dismissed pursuant to Rule 12(b)(6) for failure to state a cause of action. *See Yocum v. Dixon*, 729 F. Supp. 616, 618 (C.D. Ill. 1990) (dismissing complaint where plaintiff named individuals as defendants in the case caption, but the body of the complaint, with the exception of one allegation, was devoid of any comprehensible allegations against the individuals.)

**C.     *Plaintiffs' Claims Should Be Dismissed Because They Are Both Improperly Pled And Fail As A Matter Of Law***

In addition to the bases for dismissal set forth in Sections A and B, *supra*, the claims against BAC fail because they are improperly pled and/or not supported by law.

(1)     Plaintiffs' Unjust Enrichment Claim Fails As A Matter Of Law

Plaintiffs' unjust enrichment claim should be dismissed with prejudice. To plead a claim for unjust enrichment, Plaintiffs must "allege that the defendant unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention violated the fundamental principles of justice, equity, and good conscience." *Bd. Of Managers of Hidden Lake Townhome Owners Ass'n v. Green Trails Improvement Ass'n*, 934 N.E.2d 636, 644 (Ill. App. Ct. 2010). However,

---

[4] Plaintiffs have interspersed vague legal theories for relief within the narrative of the Complaint, which is essentially a condemnation of the mortgage industry at large.  BAC's Motion attempts to address all of the possible causes of action raised in the Complaint.  To the extent that Plaintiffs seek relief under a legal theory that this Motion does not address, any such claim necessarily fails for the reason that Plaintiffs do not allege any facts in support of it.

"[u]njust enrichment is based on an implied contract, and the theory does not apply where there is a specific contract that governs the relationship of the parties." *Id.* Here, dismissal is appropriate because the entirety of the Complaint is based upon their mortgage loan contract.

(2)     Plaintiffs' Quiet Title Claim Fails As A Matter Of Law

To state a cause of action for quiet title, Plaintiffs must show (a) that they have good or true title to the disputed property; (b) the existence of the instrument or record sought to be eliminated; (c) that the instrument or record is a "cloud on title;" and (d) a basis by which the cloud on title should be removed. *Am. Invs-Co Countryside, Inc. v. Riverdale Bank*, 596 F.2d 211, 216-217 (7th Cir. 1979). Moreover, although quiet title is sometimes seen as a vehicle by which another's claim of title is extinguished, erased, or found lacking, the true foundation of a quiet title action rests on the strength of the title held by the party bringing the action because it is "a fundamental requirement . . . that the plaintiff must recover on the strength of his own title." *See Dudley v. Neteler*, 924 N.E.2d 1023, 1026 (Ill. App. Ct. 2009).

Plaintiffs fail to show that they have good or true title to the property, nor do they plead what instrument they seek to eliminate from the title, let alone why such instrument is a "cloud on title" to allow the Court to ascertain whether removal is proper. Therefore, Plaintiffs cannot prevail on their quiet title claim.

(3)     Plaintiffs' Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim Should Be Dismissed Because It Is Not a Legally-Recognizable Claim

Plaintiffs' claim for "breach of good faith and fair dealing" should be dismissed with prejudice because it is not a legally-recognized cause of action in Illinois, either in tort or contract.  *Cobb-Alvarez v. Union Pac. Corp.*, 962 F. Supp. 1049, 1054 (N.D. Ill. 1997). While Illinois courts recognize the implied covenant of good faith and fair dealing in Illinois contracts, "such a covenant is not recognized as an independent source of duties giving rise to a cause of action in tort." *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1130-31 (Ill. 2001).

(4)    <u>Plaintiffs' Breach Of Fiduciary Duty Claim Fails As A Matter Of Law</u>

Plaintiffs' breach of fiduciary duty claim should be dismissed with prejudice. Illinois law is well-established that there is no general duty of care between a lender and a borrower. *See, e.g. Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 902 (N.D. Ill. 2009). Additionally, courts have held that the "relationship between a lender and a borrower under a contract is not a fiduciary relationship in which the lender owes a duty of care." *ARH Distribrs. v. ITT Fin. Corp.*, 1987 U.S. Dist. LEXIS, at *9 (N.D. Ill. September 24, 1987); *see also Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195-96 (Ill. 1977) (conventional mortgagor-mortgagee relationship alone does not give rise to a fiduciary/confidential relationship). Similarly, loan servicers also do not owe a duty of care to borrowers. *See, e.g. Alexander v. Bank of America*, 2010 WL 152045, at *2 (N.D. Ill. Jan. 15, 2010). BAC, as loan servicer, did not owe Plaintiffs a duty of care, let alone a fiduciary one, thereby mandating dismissal with prejudice.

(5)    <u>Plaintiffs' Negligence/Negligence Per Se Claim Fails</u>

a.    *Plaintiffs' Claim For Negligence/Negligence Per Se is Time-Barred*

The statue of limitations for negligence claims is two years from the purported act. 735 ILCS 5/13-202. Plaintiffs' allegations focus on the conduct of lenders in inducing them to enter into a loan contract and failing to disclose certain material terms of the loans prior to closing. (*See generally* Compl.) Plaintiffs entered into the subject mortgage loan in September 2007. (*See* RJN, Exh. A.)  Therefore, any negligence claim based on this loan transaction must have been brought by September 2009. However, this suit was not filed until November 2010. Accordingly, Plaintiffs' claim for negligence is time-barred and should be dismissed with prejudice.

b.    *BAC Did Not Owe Plaintiffs A Duty Of Care*

A negligence claim must allege the existence of a duty, a breach of that duty and an injury proximately caused by that breach. *Bajwa v. Metro. Life Ins. Co.*, 804 N.E.2d 519, 526 (Ill. 2004). Plaintiffs have failed to allege the requisite duty to support their claim against BAC.

Plaintiffs' negligence claim alleges that "Lenders" owed them a general duty of care to, among other things, "refrain from marketing loans they knew or should have known that borrowers could not afford or maintain." (Compl. ¶ 80.) However, as previously discussed in Section III.C.4, *supra*, this statement directly contradicts well-established Illinois law holding that there is no general duty of care between a lender and a borrower. *See Whitley*, 607 F. Supp. 2d at 902 ("Illinois does not … recognize a general duty of care owed by lenders to borrowers"). Moreover, Illinois courts have specifically found that mortgage lenders are under no duty to refrain from making loans simply because they know or should know that the borrower cannot repay the loan. *See*, *e.g. Northern Trust Co., v. VIII South Michigan Assoc.*, 657 N.E.2d 1095, 1102, (Ill. App. Ct. 1995). The lack of such a duty under Illinois law defeats Plaintiffs' claim.[5]

Furthermore, BAC does not owe a duty to Plaintiffs under TILA, HOEPA, or RESPA as they allege. (Compl. ¶ 80.) As discussed in further detail in Section III.C.7 below, all of Plaintiffs' claims under TILA are time-barred, and because HOEPA is an amendment to TILA, Plaintiffs' HOEPA claims are similarly time-barred. *See Kemezis v. Matthew*, 2008 WL 2468377, at *3 (E.D. Pa. June 16, 2010). RESPA claims under 12 U.S.C. §2607 regarding "kickbacks and unearned fees" are subject to a one-year limitations period, and RESPA claims under 12 U.S.C. §2605 are subject to a three-year limitations period. 12 U.S.C. §2614. The limitations period begins at the loan's closing. *Snow v. First Am. Title Ins. Comp.*, 332 F.3d 356, 359 (2003). Here, Plaintiffs' loan closed on September 7, 2010, (Compl. ¶¶ 13-14), but they did not file this lawsuit until November 2, 2010. Accordingly, BAC owes no duty to Plaintiffs under TILA, HOEPA, or RESPA because any claims under these statutes are time-barred.

---

[5] Moreover, even if this Court were to find that Plaintiffs have properly alleged a cause of action for negligence, their claim still fails because it is barred by the economic loss doctrine set forth in *Moorman Mfg. v. Nat'l Tank*, 435 N.E.2d 443, 449 (Ill. 1982), which bars recovery for purely economic losses like those alleged here.

To the extent that Plaintiffs are attempting to assert any independent statutory claims against BAC unrelated to negligence and/or a duty of care, Plaintiffs' claims cannot succeed on the merits. As previously stated, BAC is a loan servicer. "[L]oan servicers are generally not liable under TILA and HOEPA." *Williams v. Saxon Mortg. Servs., Inc.,* 2007 WL 3124470, at *1 (S.D. Ala. Oct. 27, 2007) (citing 15 U.S.C. § 1641(t)(1)). Thus, Plaintiffs cannot prevail on independent TILA and/or HOEPA claims against BAC.

Plaintiffs may only assert a RESPA violation against BAC under 12 U.S.C. § 2605, the "Servicer Act," because BAC is a loan servicer. However, a servicer's obligation to respond to consumer inquiries is triggered by its receipt of a "qualified written request." 12 U.S.C. § 2605(e). A qualified written request ("QWR") must be in the form of written correspondence, and it must include the "reasons for the belief of the borrower, to the extent applicable, that account is in error" or "provide[] sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B), (e)(l)(B)(ii). Plaintiffs do not allege that they ever submitted a QWR to BAC. RESPA requires that a lender timely respond to a borrowers' QWR, which must include "statement of the reasons for the belief of the borrower . . . that the account is in error or . . . other information sought by the borrower." 12 U.S.C. § 2605(e)(l)(B)(ii). Here, Plaintiffs do not allege any facts that they submitted a QWR to BAC. Even if Plaintiffs had alleged the basic elements of a QWR, Plaintiffs do not allege when they provided BAC with a QWR to demonstrate for pleading purposes that BAC's response was untimely. For these reasons, this claim fails.

(6)     Plaintiffs' Fraud Claims Must Be Dismissed

Rule 9(b) requires the plaintiff to state fraud with particularity. To meet this requirement, the plaintiff must state "the who, what, when, where, and how" of the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). In other words, the claim must be plead:

> [W]ith sufficient specificity, particularity, and certainty to apprise the opposing party of what he is called upon to answer.  Thus, a plaintiff must at least plead with sufficient particularity facts establishing the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made.

*Illinois Non-Profit Risk Mgmt. Assoc. v. Human Serv. Ctr. of S. Metro-East*, 884 N.E.2d 700 (Ill. App. Ct. 2008). Specifically, to sustain a claim for common law fraud, Plaintiffs must allege and prove: (1) BAC made a false statement of material fact; (2) which BAC knew or believed to be false; (3) with the intent to induce Plaintiffs to act; (4) Plaintiffs justifiably relied upon the truth of the statement; and (5) Plaintiffs suffered damage from such reliance. *Time Savers, Inc. v. LaSalle Bank, N.A.*, 863 N.E.2d 1156, 1167 (Ill. App. Ct. 2007).

Plaintiffs' allegations do not meet these stringent standards. Plaintiffs fail to allege how their loan was originated, much less specify any fraud in the loan origination process. The Complaint utterly fails to allege "the who, what, when, where, and how" required of any fraud claim, thereby mandating dismissal.  *See DiLeo*, 901 F.2d at 627.[6]

(7)  <u>Plaintiffs' Claims Under Are Time-Barred And Fail To State Any TILA Violation</u>
Plaintiffs' next cause of action alleges that BAC violated TILA.  (Compl. ¶¶ 95-101.) Plaintiffs claim that such violations "invalidate[] Defendant's claimed interest in the Subject Property, and entitles Plaintiff[s] to damages as proven at trial.  (Compl. ¶ 99.)  However, this claim is time-barred and unsupported by any factual allegations.

   a.      *Plaintiffs' Claim for Rescission Should Be Dismissed Because Plaintiffs*
           *Have Failed To Allege A Willingness Or An Ability To Tender Back*

---

[6] Moreover, Plaintiffs cannot avoid dismissal of their claims by attributing to BAC the alleged wrongful acts of other unnamed parties, including the loan originators.  Plaintiffs do not allege any false statement of material fact made to them by <u>BAC</u> – the servicer of their loan – prior to entering into the mortgage contract.  Plaintiffs have not alleged that BAC ever engaged in any communication with Plaintiffs in order to induce them to enter into the real estate transaction.  Plaintiffs do not specify who at BAC made representations to them, when the representations were made, or what the representations were. Accordingly, Plaintiffs' fraud claim must be dismissed with prejudice.

Plaintiffs fail to allege that they tendered or are able to tender the borrowed funds, and a borrower's failure to allege a willingness and ability to tender back the funds to a lender warrants immediate dismissal. *Tulumbuta v. Wilmington Fin., Inc.*, 2010 WL 1791271, at *2 (N.D. Ill. May 3, 2010) (finding that debtor must allege willingness and ability to tender back or else he will not be entitled to rescission); *see also Edelman v. Bank of Am. Corp.*, 2009 WL 1285858, at *2 (C.D. Cal Apr. 17, 2009).

Here, Plaintiffs were provided with a substantial loan, but Plaintiffs have failed to allege a willingness, let alone an ability, to tender back the full amount they received. (*See generally* Compl.); *AFS Fin., Inc. v. Burdette*, 105 F. Supp. 2d 881 (N.D. Ill. 2000) (finding that courts may impose conditions that are equitable given surrounding circumstances). Because Plaintiffs have failed to allege a willingness or an ability to tender back the money they received, Plaintiffs' TILA claim for rescission should be dismissed with prejudice.

> b.    *Plaintiffs' Claim For Rescission Under TILA Is Time-Barred*

Plaintiffs' claim for rescission is time-barred because their loan closed on September 7, 2010 (Compl. ¶¶ 13-14), but they did not rescind the loan until the filing of the Complaint on November 2, 2010, which is beyond the three-year statute of limitations to file a claim for rescission under TILA. *See* 15 U.S.C. § 1635(f). Accordingly, Plaintiffs' TILA claim for rescission should be dismissed with prejudice.

> c.    *Plaintiffs' TILA Claim, To The Extent It Seeks Damages, Should Be Dismissed Because TILA's One-Year Statute Of Limitations For Damages Expired Before Plaintiff Filed His Amended Complaint*

Plaintiffs' claim for monetary damages under TILA is also time-barred. Statutory damages under TILA are governed by 15 U.S.C. § 1640(e), which states in relevant part: "[a]ny action under this section may be brought in . . . within one year from the date of the occurrence of the violation." The loan closed in September 2007 (Compl. ¶¶ 13-14); however, Plaintiffs did

not file their Complaint until November 2, 2010, which is well past the one year period for bringing statutory damages under TILA. *See Jenkins v. Mercantile Mortg. Co.*, 231 F. Supp. 2d 737, 745 (N.D. Ill. 2002) ("A credit transaction is consummated for the purposes of TILA when the plaintiffs become contractually obligated on a credit transaction, in this case, the consummation being the closing of the loan."). Plaintiffs' TILA claim, to the extent it seeks damages (in addition to their claim for rescission), should be dismissed with prejudice.

        d.      *Plaintiffs' Argument For Equitable Tolling Of TILA Fails*

Plaintiffs' allegations regarding the "due diligence" that they allegedly undertook to learn of the purported fraud, (Compl. ¶¶ 44-50), ignore the fact that the three-year statute of limitations period after the loan closing is not merely the amount of time within which the right to rescission must be asserted, but is actually a time limit for the existence of the right itself. Plaintiffs' rescission claim, therefore, is not subject to a statute of limitations, but rather to a statute of repose. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417 (1998). A statute of repose is substantive; thus, when the statutory time period has passed, the cause of action is extinguished. *Id.* (because 15 U.S.C. § 1635(f) provides in such absolute terms that the right of rescission shall expire after three years, 15 U.S.C. § 1635 bars not just the bringing of a suit for rescission, but extinguishes completely the right to rescind). Plaintiffs' claim for rescission under TILA should therefore be dismissed with prejudice because Plaintiffs' loan closed on September 7, 2007 (Compl. ¶¶ 13-14), but they did not file their lawsuit until November 2, 2010, [Dkt. #1], which is well after the statutory three-year period.

        e.      *Plaintiffs Fail To Allege A Breach Of TILA By BAC*

Even if Plaintiffs' TILA claims were timely, Plaintiffs have not – and cannot – allege any TILA violation. TILA and Regulations Z, the regulation that defines credit disclosure requirements under TILA, contain specific disclosure requirements that will give rise to a TILA

violation if not followed by the creditor. *See* 15 U.S.C. § 1638(a)-(c). Plaintiffs' TILA claim, however, contains only general allegations about the loan. It fails to include any specific disclosures BAC allegedly did not make, and how BAC's conduct violated TILA. Such allegations are insufficient to satisfy the plausibility standard established in *Twombly* and *Iqbal*.

In addition, "loan servicers are generally not liable under TILA and HOEPA." *Saxon Mortg. Servs., Inc.,* 2007 WL 3124470, at *1 (citing 15 U.S.C. § 1641 (f)(1)("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.")); *see also Chow v. Aegis Mortg. Corp.*, 286 F. Supp. 2d 956, 960 (N.D. Ill. 2003). BAC, as a loan servicer, is not liable under TILA.

Plaintiffs also contend in a conclusory fashion that they are entitled to damages under TILA. (Compl. ¶ 108.) They are incorrect for a number of reasons. First, Plaintiffs concede that BAC is merely an assignee. (Compl. ¶ 21.) Accordingly, in order to be entitled to damages, Plaintiffs are required to allege that the purported TILA violations were apparent on the face of the loan documents BAC acquired. 15 U.S.C. § 1641(e). Plaintiffs' Complaint is devoid of any such allegations. Indeed, Plaintiffs' Complaint fails to provide any factual detail whatsoever as to how TILA was violated. Accordingly, Plaintiffs are not entitled to statutory damages. Moreover, even if they were entitled to such damages, their claimed damages of $2,545,338.96 are far beyond the scope of what is permitted under TILA. (Compl. ¶ 108.) *See generally* 15 U.S.C. § 1640(a) (limiting damages to actual damages and statutory damages of not greater than $4,000).

(8)    Plaintiffs' Fail To State A Cause Of Action On Their Claim For IIED

*a.    Plaintiffs' Claim For Intentional Infliction Of Emotional Distress Is Time-Barred.*

Plaintiffs' claim for intentionally inflicted emotional distress ("IIED") fails because it is time-barred. The statute of limitations for intentional infliction of emotional distress claims is

two years.  735 ILCS 5/13-202.  All of the complained-of conduct allegedly perpetrated by BAC and other non-parties took place before or during the signing of Plaintiffs' loan documents in September 2007, but his action was not filed until November 2010.  Thus, Plaintiffs' claim is time-barred.

> b.    *Plaintiffs Do Not Allege Any Facts In Support Of Their Claim For Intentional Infliction Of Emotional Distress.*

Plaintiffs' allege that the "Lenders" ("IIED") upon them, but again, fails to state how <u>BAC</u> did as much. (*See* Compl. ¶¶ 102-103.) In order to sustain a cause of action for IIED, a plaintiff must establish the following: (1) the conduct involved is truly extreme and outrageous; (2) the actor either intends that his or her conduct would inflict severe emotional distress, or knows that there is at least a high probability that his or her conduct will cause severe emotional distress; and (3) the plaintiff must actually suffer severe emotional distress caused by the defendant's conduct. *Benitez v KFC Nat'l Mgmt. Co.*, 714 N.E.2d 1002 (Ill. App. Ct. 1999).

The tort of IIED attempts to draw a line between the slight hurts which are the price of living in a complex society, and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility. *Knierim v Izzo*, 174 N.E.2d 157 (Ill. 1961); *see also Welsh v Commonwealth Edison Co.*, 713 N.E.2d 679 (Ill. App. Ct. 1999) (complaint alleging "anxiety, humiliation," and "extreme and severe emotional distress," but lacking factual allegations from which the level of severity of the emotional distress can be inferred, is insufficient). Indeed, the tort of IIED distress is reserved for conduct that is especially abusive and atrocious, and liability is found <u>only</u> where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.

Plaintiffs have alleged no facts that support their contention that BAC's conduct was "extreme and outrageous," that BAC intended to inflict severe emotional distress, that it knew

that there was a high probability that its conduct would do so, or that its conduct actually caused them any emotional distress. Moreover, the alleged actions stated in their IIED claim do not come close to amounting to "conduct that is especially abusive and atrocious" or that goes "beyond all possible bounds of decency." Instead, what Plaintiffs have done is simply proffer before the Court a myriad of conclusory statements in hopes of surviving BAC's motion to dismiss. Accordingly, Plaintiffs' IIED claim fails, and should be dismissed with prejudice.

(9)     Plaintiffs' Claim Under The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") Fails

Plaintiffs' final claim, "unfair business practices," is legally and factually deficient. In fact, Plaintiffs only cite generally to the ICFA (i.e., 815 ILCS 505/) without specifying which section BAC allegedly violated. BAC cannot meaningfully respond to such deficient pleading.

Regardless, Plaintiffs' ICFA claim fails because the loan disclosures plainly set forth the agreement terms between Plaintiffs and the Lender. Plaintiffs had a duty to review the loan disclosures prior to entering into the agreement and their failure to do so defeats their ICFA claim. *Leon v. Max E. Miller & Sons, Inc.*, 320 N.E.2d 256 (Ill. App. Ct. 1974).

When parties do not read contracts into which they enter or otherwise fail to act reasonably with respect to the contract, they cannot then claim a deceptive practice. In *Randle v. Glendale Nissan, Inc.*, the court granted the defendant's motion to dismiss the plaintiff's ICFA claim alleging deceptive practices relating to a car loan because she had not read the loan paperwork. 2005 WL 281229, at *14 (N.D. Ill. Feb. 2, 2005). The plaintiff alleged she received an advertisement stating that she was pre-approved for an automobile loan. 2005 WL 281229, at *3. The plaintiff then went to the car dealership to look for a car and told the salesman she wanted a car with monthly payments in the $350 to $400 range. *Id.* After the plaintiff selected a car, the salesman told her the lowest payment he could obtain was about $410 per month. *Id.*

When the plaintiff began to sign the paperwork, the salesman said the monthly payments would be $471, and again said that it was "the best he could do." *Id.* at 4. Plaintiff alleged that "she felt she had no other choice but to continue [signing the paperwork]." *Id.* Only after reviewing the paperwork when she got home did Plaintiff realize the price of the car was $21,995 instead of $15,995. *Id.* The plaintiff alleged oral misrepresentations by the salesman and brought ICFA claims against the dealership.

The *Randle* court dismissed the plaintiff's ICFA claim because, under Illinois law, one who signs (but does not read) a document cannot plead a lack of misunderstanding of its terms or that the contract misled her. *Id.* at 12. The *Randle* court found that even accepting as true the allegation that the salesman initially misrepresented the sale price of the car, the plaintiff had an obligation to read the documents presented to her. *Id.* at 14-15; *Rickher v. The Home Depot, Inc.*, 2007 WL 2317188 (N.D. Ill., July 18, 2007)(plaintiff's failure to read a rental agreement "closely or thoroughly . . . dooms his ICFA claim" where the challenged term was disclosed).

Here, Plaintiffs had ample time to read the loan documents, yet they now claim that the documents constituted "a lack of full disclosure" because the disclosures were "in turgid and confusing language, laced with undefined terms of art (legalese)." (Compl. ¶ 25.) Plaintiffs had every opportunity to investigate the terms of their loan documents. Their failure to do so does not entitle them to a claim under the ICFA.

## III. CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendant BAC Home Loans Servicing, LP respectfully requests that this Court: (1) grant their Motion to Dismiss Plaintiffs' Complaint in its entirety; (2) dismiss all Plaintiffs' claims with prejudice; and (3) order such other and further relief as is just and necessary.

Dated: December 15, 2010

Respectfully submitted,

BAC HOME LOANS SERVICING, LP

By: /s/ Steven R. Smith
      One of Its Attorneys

Steven R. Smith, #3128231
Michael J. Werich, #6294060
BRYAN CAVE LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
(312) 602-5000 (tel)
(312) 602-5050 (fax)
srsmith@bryancave.com
michael.werich@bryancave.com

## CERTIFICATE OF SERVICE

I, Steven R. Smith, an attorney, certify that I filed the foregoing document via the Court's ECF system, and caused a copy of same to be served on the following individual below, via U.S. Mail, on this the 15th day of December, 2010:

      Steven Olson and Lauren J. Tratar
      1021 Royal Saint George Drive
      Naperville, Illinois  60563

      /s/ Steven R. Smith
        Steven R. Smith